# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**EBONY DEW and KRYSTAL OWENS,**
**individually and on behalf of all others**
**similarly situated,**

     **Plaintiffs,**

**v.**

**MINDFINDERS, INC.,**

     **Defendant.**

**Case No. 1:20-cv-02930-BAH**

**Chief Judge Beryl A. Howell**

## JOINT STIPULATION OF SETTLEMENT AND RELEASE AGREEMENT

  This Joint Stipulation of Settlement and Release Agreement (together, with the exhibits hereto, the "Agreement") is made and entered into by and between Ebony Dew and Krystal Owens ("Named Plaintiffs") and Amya Gaymon ("Opt-In Plaintiff") individually and on behalf of a collective they seek to represent (the Named Plaintiffs, Opt-In Plaintiff, and members of the collective they seek to represent are collectively referred to as "Plaintiffs"), and Mindfinders, Inc. ("Defendant") (Plaintiffs and Defendant are referred to herein as, collectively, the "Parties" or individually, a "Party").

## RECITALS

  **WHEREAS**, on or about October 13, 2020, Named Plaintiffs, through counsel, filed the above-captioned wage and hour class and collective action complaint on behalf of themselves and similarly situated hourly workers who worked for Mindfinders in Washington D.C. and Maryland;

  **WHEREAS**, Defendant provided payroll data to Plaintiffs' Counsel (as defined below) to allow them to calculate potential damages for the asserted claims;

  **WHEREAS**, as a result of mediation before the Honorable S. Martin Teel, Jr, the Parties have agreed to fully and finally resolve this matter on the terms and conditions described herein;

  **WHEREAS**, Defendant denies all of the allegations which were raised or could have been raised in the Action (as defined below) and denies that it is liable or owes damages to anyone with respect to the alleged facts or causes of action which were asserted or could have been asserted in the Action.  Nonetheless, without admitting or conceding any liability or damages, Defendant has agreed to a settlement on the terms set forth in this Agreement to avoid the burden, expense, and uncertainty of litigation; and

**NOW, THEREFORE**, in consideration of the mutual promises set forth in this Agreement, as well as the consideration provided, the Parties agree to a full and complete settlement of the claims which were asserted or could have been asserted in the Action on the following terms and conditions.

1.    **DEFINITIONS**

The following terms, as used in this Agreement, are defined as follows:

a.    "Acceptance Period" means the 120-day period after initial mailing during which an Eligible Settlement Collective Member must sign and cash a Settlement Check.

b.    "Action" means the civil action filed in the United States District Court for the District of Columbia, captioned *Dew et. al., v. Mindfinders, Inc.*, Case No. 20-cv-02930-BAH.

c.    "Approval Order" means an order to be approved and entered by the Court, which approves the Settlement and this Agreement, and enters final judgment, in a form substantially similar to the Proposed Order Approving Collective Action Settlement, attached hereto as Exhibit A.

d.    "Complaint" means the Complaint filed to initiate the Action.

e.    "Collective Period" means the period between October 13, 2017, and September 30, 2020.

f.    "Court" means the United States District Court for the District of Columbia.

g.    "Defendant's Counsel" means Littler Mendelson, P.C.

h.    "Effective Date" means the first date the Final Approval Order is no longer appealable, which shall be 31 days after the Parties' motion for settlement approval is granted by the Court if no timely appeal of such order is filed, or if an appeal is filed, the date on which such appeal is filed.

i.    "Eligible Settlement Collective Member" means Named Plaintiffs, Opt-In Plaintiff, and 37 additional persons employed by Defendant as Hourly Employees at some point during the Collective Period, who worked pursuant to Defendant's contract with Department of General Services and who are identified in the payroll data produced by Defendant to Plaintiffs' Counsel.

j.    "Employer Payroll Taxes" means Defendant's share of taxes which an employer is required to pay arising out of or based upon the payment of wages to Eligible Settlement Collective Members as part of this Settlement, including FICA, FUTA, and SUTA obligations.

k.    "Gross Settlement Amount" means $152,000 which is the sum that Defendant has agreed to pay to fully and finally resolve and settle the claims which are asserted or could have been asserted in the Action, including any claim for attorneys' fees and costs approved by the

Court, any and all amounts to be paid to Participating Settlement Collective Members, the settlement administrator costs, and any Court-approved Service Awards. Defendant will not be required to pay any more than the Gross Settlement Amount, except Defendant will pay the Employer Payroll Taxes in addition to the Gross Settlement Amount.

l. "Net Settlement Fund" means the remainder of the Gross Settlement Amount after deductions, payments, and allocations for: (i) Court-approved attorneys' fees and costs for Plaintiffs' Counsel, (ii) the Court-approved Service Awards, and (iii) the settlement administrator costs.

m. "Participating Settlement Collective Members" means each Eligible Settlement Collective Member, including Named Plaintiffs, who signs and cashes a Settlement Check during the Acceptance Period.

n. "Plaintiffs' Counsel" means Werman Salas P.C. and Michael D. Lore, P.C.

o. "Released Parties" means Defendant and all of Defendant's past and present parents, subsidiaries and affiliated companies, including but not limited to Mindfinders, Inc, shareholders, and owners thereof, and their respective past and present predecessors, successors, assigns, representatives, partners, officers, directors, insurers, agents and employees.

p. "Settlement" means the settlement between the Parties which is embodied and contained in this Agreement.

q. "Settlement Account" means a Qualified Settlement Fund ("QSF") established and controlled by the Settlement Administrator.

r. "Settlement Administrator" means Simpluris, Inc.

s. "Settlement Check" means the check issued to each Eligible Settlement Collective Member for his or her proportionate share of the Net Settlement Fund.

t. "Settlement Notice" means the document entitled Notice of Settlement and Opportunity to Participate, to be approved by the Court in a form substantially similar to the Notice attached hereto as Exhibit B.

2. **INITIAL PROCEDURAL ISSUES**

a. Binding Agreement

This Agreement is a binding agreement and contains all material terms.

b. Retention and Responsibilities of the Settlement Administrator.

i. The Settlement Administrator shall be responsible for, among other things,

DocuSign Envelope ID: 63B08BA5-C066-4D68-8905-B841578FEE5F

preparing, printing, mailing, and emailing the Settlement Notices and Settlement Checks as directed by the Court; updating addresses with the U.S. Postal Service's National Change of Address ("NCOA") database; making commercially reasonable searches for new addresses for Eligible Settlement Collective Members whose Settlement Notices and Settlement Checks are returned as undeliverable with no forwarding address; determining the amount of payments due to each Eligible Settlement Collective Member in accordance with this Agreement, along with the amount of all payroll tax deductions to be withheld; providing status reports to Defendant's counsel and Plaintiffs' Counsel regarding the status of the mailing of the Settlement Notices and Settlement Checks, issuing and mailing checks for Court-approved Service Awards to Named Plaintiffs; wiring Court-approved attorneys' fees and costs to Plaintiffs' Counsel; printing and providing W-2s and 1099 forms as required under this Agreement and applicable law; and for such other tasks set forth in this Agreement or as to which the Parties mutually agree.

        ii.     The Settlement Administrator shall also establish, control, and maintain the Settlement Account according to the terms of this Agreement, and be responsible for filing all required tax returns for the Settlement Account and paying any taxes due.

        iii.    The Parties agree to cooperate with the Settlement Administrator, and to provide accurate information necessary to send the Settlement Notice and Settlement Checks in accordance with the terms of this Agreement.

## 3.    __MONETARY TERMS OF SETTLEMENT__

    a.    <u>Settlement Payments</u>

        i.     Defendant agrees to pay the Gross Settlement Amount to fully resolve the Action and satisfy all amounts to be paid to Eligible Settlement Collective Members, any Court-approved Service Award(s), cost of the Settlement Administrator,  and Plaintiffs' Counsel's Court-approved attorneys' fees and costs.

        ii.     Defendant also agrees to pay the Employer Payroll Taxes.

    b.    <u>Settlement Amounts Payable as Attorneys' Fees and Costs</u>

        i.     In their Approval Motion (as defined below), Plaintiffs' Counsel shall ask the Court to approve payment of up to $62,500 in attorneys' fees and up to $1,000 in litigation costs from the Gross Settlement Amount.  That amount shall be in full satisfaction of any claim or request for attorneys' fees and costs, and Plaintiffs agree that they shall not seek, and not be entitled to, any additional attorneys' fees or costs incurred in relation to this Action.  Defendant agrees that it will not object or otherwise comment on Plaintiffs' Counsel's application for attorneys' fees and costs in this Action.

        ii.     In the event that the Court rejects or reduces Plaintiffs' Counsel's application for attorneys' fees and costs, such determination shall not negatively impact the Court's consideration of whether this Agreement represents a fair and reasonable resolution of bona fide disputes under the Fair Labor Standards Act ("FLSA").  The outcome of any proceeding

related to Plaintiffs' Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Approval Motion.  If the Court awards less than the requested amount and Plaintiffs' Counsel does not appeal that award, or if Plaintiffs' Counsel appeals the award and the result of that appeal is an award of less than the amount requested, only the awarded amount shall be paid to Plaintiffs' Counsel and shall constitute full satisfaction of Defendant's obligation to pay attorneys' fees and costs in accordance with Section 3(b)(ii).  This Settlement Agreement is not conditioned upon the Court's approval of Plaintiffs' Counsel's fees and costs and any amounts that are not approved for fees and costs shall become part of the Net Settlement Amount on the Effective Date.

iii.     All of Defendant's own attorneys' fees, costs and expenses incurred in this Action shall be borne by Defendant.

c.     Service Awards

i.     The Named Plaintiffs Ebony Dew and Krystal Owens and Opt-In Plaintiff Amya Gaymon will each apply to the Court to receive a $2,000.00 Service Award ("Service Award") for services they have rendered to the Eligible Settlement Collective Members.

ii.     Defendant will not contest the amount sought for the Service Award.

iii.     Should all or part of the Service Award sought not be approved by the Court, unapproved amounts shall become part of the Net Settlement Fund.

d.     Distribution of Payments

i.     The amount of each Settlement Check was determined by Plaintiffs' Counsel from the time and pay records produced by Defendant.

ii.     For each Eligible Settlement Collective Member, Plaintiffs used the following methodology to calculate the owed minimum and overtime wages.

For the time period October 13, 2017 to March 4, 2018, Plaintiffs extrapolated for the approximately four months of missing data based on the average wages owed from March 5, 2018 to December 24, 2018.

For the time period March 5, 2018 to March 17, 2019: Plaintiffs summed the number of hours recorded in each workweek contained in the Time Reports and identified all hours less than or equal to 40.00 as Regular Hours and all hours greater than 40.00 as Overtime Hours.  Plaintiffs summed the Regular Hours and Overtime Hours recorded in each bi-weekly pay period as well as the Pay Regular Hours and Pay Overtime Hours recorded in the Pay Data. Each Eligible Settlement Collective Member's Regular Rate was computed by dividing the Regular Dollars paid by the Regular Hours from the Pay Data.

4836-9365-5030.1 / 086570-1003

In instances where the Time Data reflects a higher number of total hours than were paid in the Pay Data, Plaintiffs computed the Owed Minimum Wages by multiplying the difference between Time Hours and Pay Hours by the Eligible Settlement Collective Member's Regular Rate of Pay. Plaintiffs computed the Owed Overtime Wages by first identifying the number of overtime hours at issue per pay period. Those were hours over 40.00 in a workweek from the Time Reports that were paid at the Regular Rate of Pay or hours over 80.00 from the Pay Data that were paid at the Regular Rate of Pay. Plaintiffs multiplied the overtime hours by one half of the Eligible Settlement Collective Member's Regular Rate to compute the Owed Overtime Wages.

For the time period March 18, 2019 to September 30, 2020: Plaintiffs pulled the Earnings Hours recorded and the related Earnings Amount for each workweek. Each hourly Eligible Settlement Collective Member's Regular Rate was computed by dividing the Earnings Amount by the Earnings Hours in each workweek. Plaintiffs computed the Owed Overtime Wages by multiplying all hours greater than 40.00 per workweek times half of the Eligible Settlement Collective Member's Regular Rate.

Each Eligible Settlement Collective Member's share of the Net Settlement Amount shall be determined by dividing the sum of his or her Total Owed Minimum and Overtime Wages (the numerator) by the Total Owed Minimum and Overtime Wages for all Eligible Settlement Collective Members (the denominator). The quotient shall be each Eligible Settlement Collective Member's "Ratable Share." The Eligible Settlement Collective Member's payment shall be the product of his or her Ratable Share times the Net Settlement Amount.

iii.       For tax purposes, 25% of each payment to an Eligible Settlement Collective Member shall be treated as wages, and 75% of such payment shall be treated as liquidated damages. Payments treated as owed wages shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholdings and the employee share of the FICA tax, and shall be reported as earned in the year of payment to the Internal Revenue Service under the payee's name and Social Security number on a Form W-2. Payments treated as liquidated damages shall be made without withholdings and shall be reported as earned in the year of payment and, to the extent required by law, under the payee's name and Social Security number on a Form 1099. The Settlement Administrator will issue to Named Plaintiffs, Opt-In Plaintiff, and each Eligible Settlement Collective Member an IRS Form 1099 for the non-wage statutory damages portion of each Settlement Payment, if required by IRS regulations. The Settlement Administrator will also issue an IRS Form 1099 to Named Plaintiffs and Opt-in Plaintiff for the Service Awards. The Settlement Administrator shall be responsible for determining the appropriate number of exemptions to be used in calculating payroll tax and withholdings, deciding the appropriate tax rate, issuing the Settlement Checks and the Service Awards, and issuing the Forms W-2 and Forms 1099.

4.     **SETTLEMENT TIMELINE**

The Parties agree to the following timeline for the completion of the Settlement and dismissal of the Action:

a.      By September 14, 2021, Plaintiffs' Counsel shall file a Motion for One-Step Approval of Collective Action Settlement and Authorization of Notice (the "Approval Motion"). Plaintiffs' Counsel will provide Defendant's Counsel with a draft of the Approval Motion for review and comment as soon as practicable before filing it with the Court. Plaintiff will agree to make any reasonable edits proposed by Defendant. Defendant will not oppose the Approval Motion.  Along with the Approval Motion, Plaintiffs' Counsel also will file the Agreement, Proposed Approval Order, and Settlement Notice.  Among other things, the Approval Motion will ask the Court to: (i) issue and enter the Approval Order approving the Settlement as a fair and reasonable resolution of bona fide disputes under the FLSA, (ii) approve the proposed Settlement Notices to be sent to Eligible Settlement Collective Members and the Settlement Notice distribution process, (iii) incorporate the terms of this Agreement, (iv) approve the requests for Plaintiffs' Counsel's attorneys' fees and costs and the Service Awards, as well as the cost of the settlement administrator, and (v) enter a final judgment and order of dismissal (the "Final Judgment") dismissing the case without prejudice, with leave to reinstate on or before 60 days after the Effective Date, and in the event a motion to reinstate is not filed on or before 60 days after the Effective Date, the case shall be deemed, without further order or action of the Court, to be dismissed with prejudice.

b.      Production of Class Data: Within seven days after the Effective Date, Defendant will provide the Settlement Administrator with the following information for each Eligible Settlement Collective Member: (i) name, (ii) last known mailing address, (iii) cell phone number (if available), and (iv) personal email address (if available).  Defendant will also provide the Settlement Administrator with each Named Plaintiffs' and Settlement Collective Member's social security numbers (collectively, the "Class Data").  If an Eligible Settlement Collective Member contacts Plaintiffs Counsel regarding this Action and/or Settlement, upon Plaintiffs Counsel's request, the Settlement Administrator will provide Plaintiffs Counsel with the Eligible Settlement Collective Member's (i) name, (ii) last known mailing address, (iii) cell phone number (if available), and (iv) personal email address.

c.      Upon receipt of the Class Data from Defendant, the Settlement Administrator will verify the last known mailing address for each Eligible Settlement Collective Member using the National Change of Address (NCOA) Database, or a comparable database.

d.      Within seven days after the Effective Date, Defendant will deposit $152,000 into the Settlement Account.  With respect to the QSF, the Settlement Administrator shall: (i) calculate, withhold, remit, and report each Eligible Settlement Collective Member's share of applicable payroll taxes (including, without limitation, federal, state, and local income tax withholding, FICA, Medicare, and any state or local employment taxes), and (ii) satisfy all federal, state, and local income and other tax reporting, return, and filing requirements with respect to the QSF.

e.      Payment of Employer Share of Payroll Taxes: No later than seven days after the

Effective Date, the Settlement Administrator shall determine the Employer Payroll Taxes and shall communicate such amount to Defendant with a detailed explanation of the calculations.  No later than seven days after the Effective Date, Defendant will deposit the Employer Payroll Taxes into the Settlement Account.  In the event of any dispute as to the calculation of the Employer Payroll Taxes, Defendant and the Settlement Administrator shall meet and confer in good faith in an attempt to resolve the dispute.  If the dispute cannot be resolved, it shall be submitted to the Court for a final determination. The Settlement Administrator shall thereafter remit and report the applicable portion of the Employer Payroll Taxes to the appropriate taxing authorities on a timely basis pursuant to its duties and undertakings.  Defendant agrees to reasonably cooperate with the Settlement Administrator to the extent necessary to determine the Employer Payroll Taxes.

   f. <u>Payment of Settlement Payments, Plaintiffs' Counsel's Fees and Costs, and Service Awards</u>: Within 14 days after Defendant fully funds the Settlement Account with the Gross Settlement Amount and the Employer Payroll Taxes, the Settlement Administrator shall make the following payments from the Settlement Account:

    i. The Settlement Administrator shall issue Settlement Payments via First Class U.S. Mail to each Eligible Settlement Collective Member for his or her ratable share of the Net Settlement Fund as calculated pursuant to Section 3 of this Agreement.  The Settlement Checks shall be negotiable by the Eligible Settlement Collective Members for 120 days from the date they were mailed by the Settlement Administrator (the "Check Cashing Deadline").  The Settlement Administrator will include a notice (<u>Exhibit B</u> hereto) with each Settlement Check to each Eligible Settlement Collective Member explaining the terms of the Settlement and detailing each Eligible Settlement Collective Member's Settlement Payment.  Settlement Administrator will also email the notice to each Eligible Settlement Collective Member if an email address is available.   The face of each check shall clearly state that the check must be presented for payment within 120 days.

    ii. If any Settlement Check is returned to the Settlement Administrator as undeliverable with a forwarding address, the Settlement Administrator will promptly forward the Settlement Check to the forwarding address.  If any Settlement Check is returned to the Settlement Administrator as undeliverable without a forwarding address, the Settlement Administrator will conduct a new search for a current address through available databases and will forward the Settlement Check to the new address obtained in this manner, if any.  If, after this second mailing, the Settlement Check is again returned as undeliverable and if no other forwarding address is provided by the Settlement Collective Member or is otherwise located before the Check Cashing Deadline, the mailing process shall end for that Eligible Settlement Collective Member.

    iii. The Settlement Administrator shall mail to the addresses provided by Plaintiffs' Counsel (A) a check issued to Named Plaintiffs and Opt-In Plaintiff for their Settlement Payment, and (B) if applicable, a check issued to Named Plaintiffs and Opt-In Plaintiff for their Service Award.

    iv. The Settlement Administrator shall wire to Plaintiffs' Counsel their award of attorneys' fees and costs.

DocuSign Envelope ID: 63B98BA5-C96C-4D88-89D5-B841E78FEE5E

v.      Within 14 days after the expiration of the Check Cashing Deadline, the Settlement Administrator will provide to Defendant's Counsel and Plaintiffs' Counsel: (A) scanned copies of the negotiated Settlement Checks, and (B) a list, in Excel format, of the names of all Eligible Settlement Collective Members who negotiated their Settlement Checks including for each: (1) the amount of the Eligible Settlement Collective Member's Settlement Check, (2) mailing address, (3) cell phone number (if available), (4) personal email address (if available), (5) the amount of the Settlement Check allocated to wages, and (6) the amount of the Settlement Check allocated to liquidated damages.

g.      <u>Retention by Defendant of any Uncashed Settlement Checks</u>: Any Settlement Checks that remain uncashed after the Check Cashing Deadline shall be deemed void. The Settlement Administrator will return the funds from any such Settlement Checks to Defendant within 30 days after the Check Cashing Deadline.

### iv.      <u>RELEASE OF CLAIMS</u>

a.      Each Settlement Check shall contain, on the back of the check, the following endorsement:

**CONSENT TO JOIN AND RELEASE OF CLAIMS:**

By signing and cashing this check: (1) I agree to join the case of *Dew, et. al. v. Mindfinders, Inc.*, Case No. 20-cv-2930 (the "Lawsuit"), in United States District Court for the District of Columbia, and agree to be bound by the Agreement to settle the case; and (2) I agree to waive and release any and all claims and causes of action I have for unpaid wages under state and federal law for work performed on the Mindfinders contract with Department of General Services between October 13, 2017 and September 30, 2020, as well as any claims for unpaid sick leave. I understand that I have up to 120 days from the date I was mailed this check to sign and cash it.

b.      Eligible Settlement Collective Members who negotiate their Settlement Checks resolve, waive and fully and finally release Defendant and each of the other Released Parties from any and all claims and causes of action they have for unpaid wages under state and federal law for work performed on the Mindfinders contract with Department of General Services between October 13, 2017 and September 30, 2020, as well as any claims for unpaid sick leave.  Such individuals shall be enjoined against bringing released claims against the Released Parties.

c.      Any Eligible Settlement Collective Member who does not timely cash a Settlement Check will not be bound by any release of claims.

d.      The Parties agree and acknowledge that they have engaged in settlement negotiations through their attorneys and agree that they have reached an agreement with respect to the Settlement, as documented in this Agreement.  Each of the Parties further agrees and acknowledges that they have had the benefit of advice, investigation and/or recommendations with reference to the subject matter of this Settlement Agreement, and that the discovery of additional

information or records relevant to this Action shall not be a reason to vacate or nullify this Settlement Agreement.  The signatories hereto hereby represent that they are fully authorized to enter into this Agreement and to bind the Parties to its terms and conditions.

e.       Named Plaintiffs and Opt-In Plaintiff resolve, waive and fully and finally release Defendant and each of the other Released Parties from any and all claims (known and unknown, disclosed and undisclosed, suspected and unsuspected, and actual and consequential), debts, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees and costs, damages, and/or causes of action which were asserted or could have been asserted in the Complaint or the Action.  Without limiting the generality of the foregoing, Named Plaintiffs' Opt-In Plaintiff's waiver and release includes, but is not limited to: (i) all claims or allegations asserting discrimination, harassment, or retaliation under any federal, state or local law; (ii) any other federal (including the FLSA), state, county or local statute, ordinance, regulation or order concerning the rights of employees and/or the payment of wages and compensation; and (iii) all employment-related claims under the common law of any state, whether in tort, contract or otherwise.  By signing this Agreement, Named Plaintiffs and Opt-In Plaintiff agree and acknowledge that they are not entitled to any wages, compensation, monies or renumeration from Defendant or any of the other Released Parties other than what is described in this Agreement.

7.       **MUTUAL COOPERATION**

The Parties agree to reasonably cooperate with each other and to take all steps necessary and appropriate to obtain the Court's approval of this Agreement and all of its terms and to effectuate the terms of this Agreement, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of this Agreement.  The Parties shall use their commercially reasonable efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein.  As soon as practicable after execution of this Agreement, Plaintiffs' Counsel shall, with the assistance and cooperation of Defendant and its counsel, take all necessary steps to secure the Court's approval of this Agreement.

8.       **INTERPRETATION AND ENFORCEMENT/MISCELLANEOUS TERMS**

a.       <u>Arm's Length Transaction</u>.  The terms and conditions of this Agreement are the result of lengthy, intensive, arm's-length negotiations between the Parties.  Accordingly, this Agreement is not to be construed in favor of or against any Party by reason of the extent to which any Party or its counsel participated in the drafting of the Agreement.

b.       <u>No Assignment</u>.  Named Plaintiffs, and Opt-In Plaintiff  represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Action, or any related action, and any attempt to do so shall be of no force or effect.

c.       <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous

-10-

negotiations and understandings between the Parties shall be deemed merged into this Agreement.

d.      <u>Captions</u>.   The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

e.      <u>Governing Law</u>.  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the District of Columbia, without regard to choice of law principles, except to the extent that the laws of the United States governs any matter set forth herein, in which case such federal law shall govern.

f.      <u>Continuing Jurisdiction</u>.  Consistent with the terms of this Agreement, the Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the Settlement contemplated thereby.

g.      <u>Waivers and Modifications</u>.   No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification or amendment with any required Court approval.  Any failure by any Party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such Party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

h.      <u>Notice</u>. The Settlement Notice will advise all Eligible Settlement Collective Members of the binding nature of the release and that by signing and cashing a Settlement Check they are bound by the release provisions in this Agreement.

i.      <u>Counterparts</u>. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same original instrument.

j.      <u>Signatures and Transmittal</u>.  Either Party may execute this Agreement by causing his/its counsel to sign on the designated signature block below and transmitting that signature page via facsimile, email or other electronic means to counsel for the other Party.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the Party whose counsel transmits the signature page by facsimile or email.

k.      <u>Prohibitions on Press and Publicity</u>. The Parties shall keep the terms of this Agreement confidential until the Named Plaintiffs file the Approval Motion.  Prior to Court approval, the Parties and their Counsel agree that they will not (A) issue a press release, disclose to, or otherwise notify the media about the terms of the proposed settlement agreement; and/or (B) advertise any of the terms of the proposed settlement agreement through written, recorded or

electronic communication.   To the extent that the Parties and/or their respective counsel are
contacted by the media about this Agreement, they shall be permitted to respond to such inquiries
only by stating that the Parties have reached a tentative settlement subject to court approval, and
that the Parties and their Counsel believe they have reached a fair and reasonable settlement of the
disputed claims.  The Parties and their Counsel may not disclose any of the specific terms of this
Agreement in response to media and/or press inquiries at any time.  Any press release by any Party
will be negotiated and mutually agreed upon by the Parties as part of the mediation process.
Notwithstanding the foregoing, the Parties shall also have the right to disclose this Agreement as
may be required under federal or state tax and/or securities laws or under generally accepted
accounting principles, and may disclose in legal proceedings in other matters a summary of the
terms of this Agreement.  Named Plaintiffs also shall have the right to disclose the Settlement to
their tax and legal advisors and spouse.   The Parties further agree and acknowledge that nothing
herein shall prevent Plaintiffs' Counsel from referring or citing to this lawsuit and the pleadings
and other papers filed in obtaining approval of this settlement in any court filings and proceedings
in other cases for the purposes of demonstrating their experience and adequacy as class counsel.
Finally, nothing in this section prevents a party from moving to enforce this Agreement.

DATED: _September 8, 2021_, 2021          **Ebony Dew**

DocuSigned by:

5C52728EB0774B9...

DATED: _September 7, 2021_, 2021          **Krystal Owens**

DocuSigned by:

Krystal Owens

01AEC1E84BD446C...

DATED: _September 8, 2021_, 2021          **Amya Gaymon**
:

DocuSigned by:

5981D107FB224C1...

DATED: _9/9/2021_, 2021          **Mindfinders, Inc.**

DocuSigned by:

By: _____
32E38588A45A417...

Its: _____

4836-9365-5030.1 / 086570-1003

**Exhibit A**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **EBONY DEW and KRYSTAL OWENS,** individually and on behalf of all others similarly situated, <br><br> **Plaintiffs,** <br><br> v. <br><br> **MINDFINDERS, INC.,** <br><br> **Defendant.** | **Case No. 1:20-cv-02930-BAH** <br><br> **Chief Judge Beryl A. Howell** |

### [PROPOSED] ORDER APPROVING COLLECTIVE ACTION SETTLEMENT

The above-entitled matter came before the Court on Plaintiffs' Unopposed Motion for Approval of a Collective Action Settlement ("Approval Motion").

### The Settlement is Approved

1.      The Court finds that the settlement in this Fair Labor Standards Act action is fair and reasonable resolution of a bona fide dispute, and therefore, meets the requirements for approval.

2.      The Court approves the parties' Joint Stipulation of Settlement and Release Agreement, attached to the Abrahamson Declaration as Exhibit A, and "so orders" all of its terms.

3.      The Court has reviewed and approves the Fair Labor Standards Act settlement as set forth in the Settlement Agreement.

4.      The proposed Notice of Settlement ("Notice") and the plan for its distribution is APPROVED for the reasons set forth in Plaintiffs' Motion.  The proposed Notice clearly and

DocuSign Envelope ID: 63B98BA5-C96C-4D88-8DD5-B841E79FEE5E

accurately describes the nature of the Litigation, which individuals are authorized to participate in the Settlement, and the Plaintiffs' claims and Defendant's defenses.  It also fairly describes the claims to be released by the settlement class.  The Notice apprises members of the settlement class of their options under the Settlement Agreement.  It also apprises members of the settlement class that, upon approval of the Settlement, the Court entered an order permanently enjoining all members of the settlement class from pursuing any claims that are released under the Agreement.

5.      The Court approves the Service Awards for Ebony Dew, Krystal Owens, and Amya Gaymon.

6.      The Court grants Plaintiffs' request for attorneys' fees and out-of-pocket costs and expenses.

7.      Plaintiffs Ebony Dew and Krystal Owens, Opt-In Plaintiff Amya Gaymon, and all Settlement Collective Members who negotiate their Settlement Checks are ENJOINED from filing any claim against Defendant released in the Settlement Agreement.

8.      The Court approves Simpluris, Inc., as the Settlement Administrator.

9.      Final judgment as to the released claims is hereby ENTERED.

10.      This case is dismissed without prejudice, with leave to reinstate on or before 60 days after the Effective Date, and in the event a motion to reinstate is not filed on or before 60 days after the Effective Date, the case shall be deemed, without further order or action of the Court, to be dismissed with prejudice.

11.      This Court will retain jurisdiction over this Action for the purposes of supervising the implementation, enforcement, construction, administration, and interpretation of the Agreement, including the distribution of the settlement funds.

It is so ORDERED this ___ day of _____, 2021

A-2

DocuSign Envelope ID: 63B98BA5-C96C-4D88-89D5-8841E79FEE5E

_____

Hon. Beryl A. Howell

A-3

<u>**Exhibit B**</u>

**[Date]**

**Via U.S. Mail**
[Name]
[Street Address]
[City, State and Zip]

     **Re:**    **Mindfinders Wage and Hour Lawsuit – Notice of Settlement and Opportunity to Participate**

Dear [Name]:

     You are receiving this letter because on _____ _____, 2021, a federal court in the District of Columbia approved a $152,000 settlement of a wage and hour lawsuit (the "<u>Lawsuit</u>") against Mindfinders, Inc. ("<u>Mindfinders</u>").  You may participate in the settlement because you worked for Mindfinders as an hourly employee on a contract with Department of General Services between October 13, 2017 and September 30, 2020.

     This letter explains the Lawsuit, the settlement, how to participate in the settlement, and the effect of your cashing or depositing the enclosed check.

     **1.**     **What is the Lawsuit About?**

     Plaintiffs, hourly-paid workers employed by Mindfinders, filed this Lawsuit alleging that Mindfinders failed to pay them 1.5 times their regular hourly rate for hours worked over 40 in a week in in violation of the Fair Labor Standards Act (the "<u>FLSA</u>"), and also alleging violations of D.C. law for failing to pay minimum wages, failing to pay discharged employees all wages earned, and failing to provide paid sick leave.

     Mindfinders denies that it violated the FLSA or D.C. law.  However, to avoid further dispute, protracted litigation, and related costs, Mindfinders and the Plaintiffs have agreed to settle the Lawsuit.

     The Court presiding over this case has not made any rulings on the merits of the claims or defenses in the Lawsuit, and no party has prevailed.  Rather, the parties came to a mutually agreeable resolution which the Court has approved.

     **2.**     **Does the Court Have an Opinion as to the Merits of the Lawsuit?**

     This notice is for the sole purpose of providing you with objective and neutral information concerning your right to participate in the settlement. The Court takes no position regarding whether or not the claims made in the Lawsuit have legal merit.

B-1

**3.      How Was My Settlement Payment Calculated and What Does it Represent?**

Mindfinders has agreed to pay a total of $152,000 to settle the lawsuit for approximately 43 hourly employees, which is the Gross Settlement Amount.  From that amount, the following payments are being made: Plaintiffs' attorneys' fees in the amount of $62,500; Plaintiff's litigation costs in the amount of $1,000; and payments to the two Named Plaintiffs and one Opt-In Plaintiff in the amount of $2,000 each for the time and effort associated with their participation in the Lawsuit; and the costs of the settlement administrator.  The remaining amount will be distributed among current and former hourly employees who worked for Mindfinders between October 13, 2017 and September 30, 2020.

Your payment was calculated by taking the wages that were calculated to be allegedly owed to you under the formula provided in the Settlement Agreement and by dividing that number by the total amount calculated to be owed to all hourly employees who are eligible to participate in the settlement.  The result is your ratable share of the Net Settlement Fund.  The enclosed settlement payment is your ratable share of the Net Settlement Fund.

**If you have questions about your settlement amount, contact Plaintiffs' Counsel identified below in Paragraph 8**.

**4.      How Do I Participate in the Settlement?**

To participate in the settlement, you should deposit or cash your settlement payment on or before [insert date 120 days from the date on the check].

**5.      Will I Owe Taxes on a Settlement Payment if I Participate?**

Your individual settlement payment has been separated into two equal amounts: 25% has been allocated to the claims asserted in the Lawsuit for unpaid wages, and 75% has been allocated to the claims asserted in the Lawsuit for liquidated damages.  The portion allocated to unpaid wages is subject to all authorized or required payroll tax deductions, just as if it were a regular paycheck, and it will be reported on an IRS Form W-2.  The portion allocated to liquidated damages will be reported as non-wage income on an IRS Form 1099.  Mindfinders will pay the employer's share of applicable state and federal payroll taxes on the wage portion of your payment. Normal employee payroll taxes have been deducted from the wage portion of your payment. Neither Plaintiffs' counsel nor Mindfinders or its counsel makes any representations to you concerning the tax implications of the settlement payment.  **Please consult with your accountant or other tax advisor regarding the tax consequences of the settlement amount paid to you.**

**6.      What are My Options?**

If you deposit or cash your settlement payment by _____, 2021, you will be consenting to opt into the Lawsuit.  By opting into the Lawsuit, you agree to be bound by the Agreement to settle the case; and agree to waive and release any and all claims and causes of action you have for unpaid wages under state and federal law for work performed on the Mindfinders contract with Department of General Services between October 13, 2017 and September 30, 2020, as well as

4836-9365-5030.1 / 086570-1003

any claims for unpaid sick leave, and will enjoined from ever bringing such claims against Mindfinders.

Please note that the check contains the following language which verifies your agreement to opt into the Lawsuit for purposes of the settlement and to waive and release any alleged wage claims and other claims alleged in the Lawsuit:

*CONSENT TO JOIN AND RELEASE OF CLAIMS*:

By signing and cashing this check: (1) I agree to join the case of *Dew, et. al. v. Mindfinders, Inc*., Case No. 20-cv-2930 (the "Lawsuit"), in United States District Court for the District of Columbia, and agree to be bound by the Agreement to settle the case; and (2) I agree to waive and release any and all claims and causes of action I have for unpaid wages under state and federal law for work performed on the Mindfinders contract with Department of General Services between October 13, 2017 and September 30, 2020, as well as any claims for unpaid sick leave. I understand that I have up to 120 days from the date I was mailed this check to sign and cash it.

If you do not deposit or cash your settlement payment by _____, 2021, the check will become void and you will not participate in the settlement.  You will not receive any money from this settlement and you will not release any claims you may have against Mindfinders.

**7.      What Happens if My Address Changes Before I Receive my IRS Tax Forms?**

If your address changes before you receive your IRS tax forms, it is your responsibility to inform the Settlement Administrator, at the following phone number or address: [insert]

**8.      Are There More Details Available?**

Yes. This notice summarizes the basic material terms of the settlement. If you have questions about the settlement or your settlement payment, you may contact Plaintiffs' attorneys at:

Sally J. Abrahamson
Werman Salas P.C.
Email: sabrahamson@flsalaw.com
Phone: 202-830-2016

**Do not contact the Judge or the Court Clerk or Mindfinders' attorneys about this settlement.**

Any questions regarding the tax implications of the settlement payments should be directed to your tax professional.  Any questions about the settlement should be directed to Plaintiffs' attorneys.

B-3
