## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EBONY DEW, *et al.*,

                    Plaintiffs,

            v.                                          Civil Action No. 20-2930 (BAH)

MINDFINDERS, INC.,                                      Chief Judge Beryl A. Howell

                    Defendant.

### MEMORANDUM OPINION

Pending before the Court is the plaintiffs' consented-to motion to approve a settlement

agreement between the named plaintiffs, Ebony Dew and Krystal Owens, opt-in plaintiff Amya

Gaymon, and defendant Mindfinders, Inc., in this suit brought under the Fair Labor Standards

Act, 29 U.S.C. § 201 *et seq.*  Pls.' Unopposed Mot. for Approval of Settlement, Serv. Payments,

& Att'ys' Fees & Costs ("Pls.' Mot."), ECF No. 34.  For the reasons below, the motion is

granted in part.

## I.    BACKGROUND

Plaintiffs are former hourly-paid employees of defendant Mindfinders, Inc., a

Washington D.C. corporation with its headquarters in Washington, D.C.  Compl. ¶¶ 2, 30, ECF

No. 1.  Plaintiff Ebony Dew was employed by defendant from approximately August 2018

through September 2020.  *Id.* ¶ 12.  Plaintiff Krystal Owens was employed by defendant from

approximately April 2017 through August 2019.  *Id.* at ¶ 22.  Plaintiffs Dew and Owens filed this

suit on October 13, 2020, *id.* ¶¶ 1, 30, bringing claims under the Fair Labor Standards Act,

29 U.S.C. § 201 *et seq.* ("FLSA"); the D.C. Minimum Wage Act, D.C. Code § 32-1001 *et seq.*

1

("DCMWA"); the D.C. Wage Payment and Collection Law, *id.* § 32-1301 *et seq.* ("DCWPCL"); and the D.C. Accrued Safe and Sick Leave Act, *id.* § 32-531.01(2), (3)(A).  Compl. ¶ 2.

Plaintiffs alleged that defendant: (1) failed to pay plaintiffs and other hourly workers in Washington, D.C., minimum wages for all hours worked, Compl. ¶¶ 94–99; (2) failed to pay plaintiffs and other hourly workers overtime wages for hours that they worked in excess of 40 per workweek, *id.* ¶¶ 86–93, 100–06; (3) failed to timely pay all wages to plaintiffs and other hourly workers, *id.* ¶¶ 107–13, 128–36; (4) failed to provide paid sick leave to plaintiffs and other hourly workers who worked in Washington, D.C., *id.* ¶¶ 114–20; and (5) retaliated against plaintiff Dew for bringing a claim for unpaid wages, *id.* ¶¶ 137–154.[1]  The case was brought as a collective action under FLSA, 29 U.S.C. § 216(b), on behalf of similarly situated hourly employees ("Collective Members"), *id.* ¶ 40, and as a putative class action with respect to the D.C. Code causes of action, *id.* ¶ 47.

Amya Gaymon was added as an opt-in plaintiff to this case on October 23, 2020, Notice of Filing of Consent Form of Amya Gaymon, ECF No. 6-1; *see also* 29 U.S.C. § 216(b) (employee may become a party plaintiff if he "gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought").

Defendant was served on December 20, 2020, Return of Service Aff., ECF No. 10, but, by January 19, 2021, still had not filed an answer, which was due on January 10.  Consequently, plaintiffs filed an affidavit requesting that the Clerk enter default.  *See* Affidavit for Default, ECF No. 14.  On January 22, 2021, the Clerk entered default against defendant.  *See* Clerk's Entry of

---

[1]       Plaintiffs also brought claims under Maryland state law, *see* Compl. ¶¶ 121–136, but the parties' negotiated settlement addresses only those claims that arose in the District of Columbia pursuant to its contract with the D.C. Department of General Services.  *See* Pls.' Mot. at 6 n.3.  Plaintiffs also aver that defendant produced information in discovery (1) demonstrating that it paid proper overtime on other contracts and (2) that it had a paid sick leave policy with respect to plaintiffs.  *Id.*

Default, ECF No. 15.  On February 12, 2021, plaintiffs moved for default judgment, Pls.' Mot. Default J., ECF No. 18, and, after defendant failed to respond within the required two weeks, *see* D.D.C. LCvR 7(b), the Court ordered defendant to show cause as to why that motion should not be granted, Min. Order (Mar. 2, 2021).

A week later, on March 9, 2021, defendant's counsel entered an appearance, Notice of Appearance, ECF No. 21, and the parties filed a joint response to the Court's order to show cause.  Joint Resp. to Order of the Court, ECF No. 23.  The parties moved to vacate the Clerk's Entry of Default, withdraw plaintiffs' Motion for Default Judgment, and refer the case for mediation.  *Id.* ¶¶ 5–7.  The parties' motion was granted, and the case referred to Judge Martin Teel for mediation. *see* Min. Order (Mar. 10, 2021); Min. Order (June 22, 2021).  Prior to mediation, the parties exchanged informational discovery.  Decl. of Sally Abrahamson ("Abrahamson Decl.") ¶ 9, ECF No. 34-2.  The parties engaged in a day-long mediation on July 30, 2021, and these discussions resulted in the Settlement Agreement for which the parties now seek judicial approval.  *Id.* ¶¶ 10–11.

### A.    Proposed Settlement Agreement

On September 14, 2021, plaintiffs filed an unopposed motion for approval of the proposed Settlement Agreement.  *See* Pls.' Mot.  Under the proposed agreement, defendant would pay a fixed gross settlement amount of $152,000 to settle the pending action and fully resolve plaintiffs' claims.  Settlement Agreement § 1(k), ECF No. 34–3.  This gross amount would go towards (1) service payments to named plaintiffs and opt-in plaintiff; (2) settlement checks to eligible individuals, (3) attorneys' fees and costs, and (4) any settlement administrator costs.  *Id*. §§ 1(*l*), 3(a)–(d).

3

From the gross settlement amount, the proposed Agreement allocates up to $62,500 in attorneys' fees and $1,000 in litigation costs from the gross settlement amount. *Id.* § 3(b)(i).[2]  It further provides $2,000 in service payments to named plaintiffs, Dew and Owens and opt-in plaintiff Gaymon. *Id.* § 3(c)(i).  Plaintiffs estimate that $3,000 of the gross settlement will be paid to a Settlement Administrator.  Abrahamson Decl. ¶ 38.  The remaining funds—the "Net Settlement Fund"—would be divided on a *pro rata* basis among identified collective members who choose to participate in the settlement.  Settlement Agreement §§ 1(*l*), 3(d); *see* also Pls.' Mem. Supp. Mot. for Approval of Settlement, Serv. Payments, & Att'ys' Fees & Costs ("Pls.' Mem.") at 4-6, ECF No. 34-1 (describing allocation of the Net Settlement Fund).  Each settlement member's share would be calculated by dividing each member's total owed wages by the total owed wages for all members of the settlement group, all determined from time and pay records produced by defendant.  Settlement Agreement § 3(d).

The proposed agreement permits additional eligible Collective Members to opt-in to the settlement.  Pls.' Mem. at 4.  The agreement defines those additional employees eligible to participate in the settlement as employees who worked for defendant between October 13, 2017, and September 30, 2020.  *See* Settlement Agreement § 1(i).  Apart from named plaintiffs and opt-in plaintiff, the parties have identified 37 other individuals who meet these criteria.  *Id.* Under the proposed agreement, defendant will provide the settlement administrator with the name, identifying information, and last known address of each eligible collective member.  *Id.* § 4(b).  The settlement administrator will determine the payroll taxes and communicate the total amount with a detailed explanation of the calculations to defendant.  *Id.* § 4(e).  Fourteen days

---

[2]      The Settlement Agreement described the fees and costs as being subject to Court approval.  *Id.*  For the reasons described below, *see infra* Part III.C, the Court will not opine on the reasonableness of the various fees and costs in the proposed agreement beyond concluding that *plaintiffs'* recovery, accounting for counsels' proposed fees and costs, is reasonable.

after defendant has fully deposited the gross settlement amount, including additional payroll tax amounts, the settlement administrator will issue checks to the eligible collective members. *Id.* § 4(f). Eligible members then have 120 days from the mailing of the settlement checks to negotiate their settlement checks. *Id.* § 4(f)(i).

In return for these payments, Collective Members who timely cash their settlement checks release defendant from all claims or causes of action for "unpaid wages under state and federal law for work performed on the defendant's contract with the D.C. Department of General Services between October 13, 2017 and September 30, 2020, as well as any claims for unpaid sick leave." *Id.* § 6(b). This release, of course, does not apply to Collective Members who do not timely negotiate or cash their checks. *Id.* § 6(c). The funds from any settlement checks that remain uncashed after 120 days will be returned to defendant within 30 days. *Id.* § 5(g).

## II.    LEGAL STANDARD

The D.C. Circuit has not addressed the issue of whether judicial approval is required of FLSA settlements reached after a FLSA suit has been filed or the related issue of whether such approval is a prerequisite for subsequent judicial enforcement of a private settlement. Another Judge in this District, citing Supreme Court precedent and the decisions of other Circuits, has noted that "[i]t is a long-held view that FLSA rights cannot be abridged or otherwise waived by contract because such private settlements would allow parties to circumvent the purposes of the statute by agreeing on sub-minimum wages." *Beard v. Dist. of Columbia Hous. Auth.*, 584 F. Supp. 2d 139, 143 (D.D.C. 2008) (citing *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 116 (1946)); *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981); *Taylor v. Progress Energy, Inc.*, 493 F.3d 454, 460 (4th Cir.2007), *superseded on other grounds*, *Whiting*

*v. Johns Hopkins Hosp.*, 416 Fed. Appx. 312 (4th Cir.2011); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

No binding caselaw in this Circuit requires a district court to assess proposed FLSA settlements *ex ante*. *Sarceno v. Choi*, 78 F. Supp. 3d 446, 449, (D.D.C. 2014). Declining to do so, however, leaves the parties in an uncertain position. If the parties privately settle FLSA claims and seek dismissal of the suit by filing a Rule 41 motion, the private settlement may be held unenforceable if the employer attempts to enforce the employees' waiver of claims per the settlement at a later date. *Cf. Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 256–57 (5th Cir. 2012) (enforcing private settlement agreement entered into without judicial consent where court determined that a bona fide dispute had existed when settlement was entered). s

When assessing the terms of an FLSA settlement agreement, the court proceeds in two steps. First, the court must determine whether the proposed settlement "resolves a bona fide dispute." *Carrillo v. Dandan, Inc.*, 51 F.Supp.3d at 124, 131 (D.D.C. 2014). "A settlement is bona fide if it reflects a reasonable compromise over issues that are actually in dispute[.]" *Sarceno*, 78 F.Supp.3d at 450 (internal quotation marks and citation omitted).

Second, "[o]nce a bona fide dispute has been established, the court must consider whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Eley v. Stadium Grp., LLC*, 236 F. Supp. 3d 59, 63 (D.D.C. 2017) (quoting *Sarceno*, 78 F. Supp. 3d at 450). This inquiry considers the "totality of the circumstances" in assessing whether an FLSA settlement is fair and reasonable. *Carrillo*, 51 F.Supp.3d at 132 (explaining that "the focus is on the fairness of the process used by the parties to reach settlement and the practical ramifications of the settlement"); *see also Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1173

(S.D. Cal. 2016) (acknowledging that "many courts have adopted a totality of circumstances approach" and thereafter adopting a variation on that approach).  The factors to consider include "whether the proposed settlement (1) was the product of overreaching by the employer; (2) whether the settlement was the product of negotiation between represented parties following . . . [a]rm's length bargaining[;] and (3) whether there exist serious impediments to the collection of a judgment by the plaintiffs."  *Carrillo*, 51 F. Supp. 3d at 132 (alterations in original) (internal quotation marks omitted).  In making this evaluation, the "[c]ourt should be mindful of the strong presumption in favor of finding a settlement fair."  *Sarceno*, 78 F. Supp. 3d at 451 (alteration in original) (quoting *Velez v. Audio Excellence, Inc.*, No. 10-cv-1448-ORL-22, 2011 WL 4460110, at *1 (M.D. Fla. Sept. 21, 2011)).  Courts must also be cognizant of the fact that that "settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution."  *In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 806 (3d Cir. 1995); *see also Crabtree v. Volkert, Inc.*, No. 11-cv-529, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013) (noting that "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement" (quoting *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1227 (M.D. Fla. 2009)) (internal quotation marks omitted)).

## III.   DISCUSSION

The two requirements for assessing whether to approve the proposed FLSA Settlement Agreement are addressed in turn, followed by plaintiffs' requested relief that extends beyond the scope of judicial evaluation of such an agreement.

### A.   The Settlement Agreement Resolves a Bona Fide Dispute

First, the Court must find that the proposed settlement resolves a bona fide dispute.  *Sarceno.* 78 F. Supp. 3d at 450. This requirement is easily met here.

7

Here, plaintiffs initiated these proceedings by filing a lawsuit seeking unpaid wages. Pls.' Mem. at 8.  After defendant submitted schedule and payroll data, a number of material factual and legal disputes arose, and the parties engaged into mediation.  *Id.*  The parties disagreed over "(1) whether the unpaid wages at issue were the result of a coding error or part of defendant's general policies or practices;  (2) the extent to which overtime was unpaid; (3) whether defendant should be held liable for liquidated damages; and (4) whether defendant failed to raise the company's hourly wages to comply with D.C.'s minimum wage increase."  *Id.* Consequently, the fundamental issue of the wages owed to plaintiffs and the appropriate damages are contested, thereby presenting a bona fide dispute for the Settlement Agreement to resolve.

B.    **The Settlement is Fair, Reasonable and Adequate**

The Court is satisfied that the Settlement Agreement represents a fair and reasonable compromise between the parties, upon consideration of the entirety of the circumstances surrounding the agreement.  As to the first factor—whether the settlement is a result of employer "overreaching"—the parties have not provided the exact estimate of the total amount of money the plaintiffs claim to be owed, making independent evaluation of where the settlement amount falls between the plaintiffs' position and the defendant's impossible.  *Cf. Carrillo*, 51 F. Supp. 3d at 133–34 (discussing $22,000 gap between plaintiffs' asserted claim for wages owed and defendants' belief as to maximum exposure).  Plaintiffs have, however, indicated that the gross settlement amount provides over 100 percent of unpaid wages and liquidated damages under FLSA, Pls.' Mem. at 9–10 (citing Abrahamson Decl. ¶ 13), and that plaintiffs will "recover[] 100 percent of what they could have recovered under the FLSA in litigation."  Abrahamson Decl. ¶ 13.  Comparing the gross settlement amount to plaintiffs' estimated FLSA damages, this is not an overreach.  *See Carrillo*, 51 F. Supp. 3d at 133–34 (finding a proposed $15,500 gross

settlement did not result from employer overreach where the plaintiffs' estimated total damages at $24,000).[3]

The second factor—whether the agreement is a result of arm's length negotiation—weighs heavily in favor of approving the settlement. The parties engaged in negotiations while represented by counsel with significant experience in litigating FLSA claims. Pls.' Mem. at 11; *see also* Abrahamson Decl. ¶¶ 10–12. Plaintiffs' counsel investigated the underlying claims and received discovery regarding the claims and wage information from defendant. Pls.' Mem. at 6 n.3, 10–11; *see also Eley*, 236 F. Supp. 3d at 64. Importantly, the parties' negotiations culminated in mediation supervised by an experienced and respected mediator, *see* Abrahamson Decl. ¶ 10, "which further bolsters the arm's length nature of the negotiations," *Sarceno*, 78 F. Supp. 3d at 451.

As for the third factor—accounting for the difficulty of collecting any judgment—plaintiffs assert that even if they "could have recovered more in contested litigation, the value of immediate recovery outweighs the potential for recovery, considering the cost of continued litigation, the risk of no recovery at all, and the delay that would be caused by an appeal after a judgment." Pls.' Mem. at 11–12; Abrahamson Decl. ¶ 14. Given the aforementioned factual and legal disputes between the parties, the Court is satisfied that the settlement appropriately

---

[3]     Relatedly, plaintiffs' requested attorneys' fees and costs support the conclusion that the Settlement Agreement is a reasonable resolution of the dispute. The proposed agreement provides for $62,5000 in attorneys' fees, representing 41 percent of the total recovery. *See* Settlement Agreement § 3(b)(i). This proportion of the total settlement amount is consistent with the proportion of attorneys' fees allocated in other settlements approved in this District. *See Eley*, 236 F. Supp. 3d at 65 (approving settlement agreement where attorneys' fees represented 37 percent of total recovery in class action); *Sarceno*, 78 F. Supp. 3d at 452 (approving settlement agreement where attorneys' fees represented slightly under 40 percent of total recovery); *Carrillo*, 51 F. Supp. 3d at 134 (approving settlement agreement where attorneys' fees accounted for approximately 55 percent of total recovery). In other words, the contemplated attorneys' fees do not eat into the gross settlement fund so much as to render the Settlement Agreement unreasonable or unfair to plaintiffs.

considers the potential benefits and risks of proceeding to trial.  *See Sarceno*, 78 F. Supp. 3d at 452.

### C.     Other Issues

Plaintiffs also request express judicial approval of the service awards, the attorneys' fees and costs, and the administrator's fees and costs, and to incorporate in an order all terms of the Settlement Agreement, including a provision enjoining plaintiffs and those absent Collective Members, who negotiate their settlement checks, from filing a released claim against defendant. *See* Proposed Order at 2, ECF No. 34-6.  The Court need not approve any of these terms, and will not impose an injunction, since judicial "review of a proposed FLSA settlement is properly limited only to those terms precisely addressing the compromised monetary amounts to resolve pending wage and overtime claims."  *Sarceno*, 78 F. Supp. 3d at 452 (quoting *Carrillo*, 51 F. Supp. 3d at 134).  The various fees contemplated in the Settlement Agreement are relevant insofar as they do not decrease the net settlement fund so much as to be unreasonable, but they need not individually be found reasonable by the Court to approve the Settlement Agreement. Accordingly, insofar as plaintiffs' motion seeks an order beyond this limited purpose, the Court simply does not opine.  *See Sarceno*, 78 F. Supp. 3d at 452 (approving FLSA settlement without specifically approving attorneys' fees or addressing aspects of the proposed agreement beyond the compromised monetary amounts to resolve pending wage and overtime claims,); *Carrillo*, 51 F. Supp. 3d at 134 (same).  The Court will retain jurisdiction to enforce the settlement, as plaintiffs request.  *See* Proposed Order at 2.

## IV.   CONCLUSION

For the foregoing reasons, plaintiffs' Unopposed Motion for Approval of Settlement, Service Payments, and Attorneys' Fees and Costs, ECF No. 34, is granted in part.

An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date:  October 14, 2021

_____

BERYL A. HOWELL
Chief Judge